UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY DEAN REDERICK,<br><br>Defendant. | 4:20-CR-40066-KES<br><br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL |

Defendant, Larry Dean Rederick, moves for judgment of acquittal under Federal Rule of Criminal Procedure 29, or alternatively for a new trial under Rule 33. Docket 108. The United States opposes the motion. Docket 116. For the following reasons, the court denies Rederick's motion.

## BACKGROUND

In a superseding indictment, a grand jury charged Rederick with one count of conspiracy to distribute a controlled substance and one count of possession of a controlled substance with intent to distribute. Docket 58. A jury trial began on January 4, 2022. At the close of evidence, before the jury began deliberating, Rederick made an oral motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. Docket 103-2 at 37-38. The court denied Rederick's motion for judgment of acquittal. *Id.* at 38. The jury began deliberating and returned a verdict of guilty on both counts. Docket 91.

## DISCUSSION

I. **Motion for Judgment of Acquittal**

    A. **Legal Standard**

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)). The Rule 29 standard is " 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). "[T]he district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

B.   **Whether Sufficient Evidence Exists to Sustain the Guilty Verdict**

The jury found Rederick guilty on Count 1 of the superseding indictment that charged him with possession of a controlled substance with intent to distribute 50 grams or more of methamphetamine (actual). Docket 91. This charge required the United States to prove beyond a reasonable doubt that Rederick was in possession of methamphetamine (actual), that he knew he was in possession of it, and that he intended to distribute some or all of it to another person. Docket 89 at 3-4. The United States also had to prove beyond a reasonable doubt that Rederick intended to distribute 50 grams or more of methamphetamine (actual). *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Rederick argues that "the evidence clearly was insufficient to establish that [he] possessed methamphetamine on January 9, 2020[.]" Docket 108 at 1. Rederick acknowledges that the evidence at trial showed that "methamphetamine [was] seized from [the] trunk of the Monte Carlo that was on the trailer being towed by the defendant's pickup truck." Docket 109 at 5. But he argues that the presence of methamphetamine in the car on the trailer does not amount to possession, because "[n]o witness testified that they saw [Rederick] putting any methamphetamine in the trunk of the Monte Carlo." *Id.*

Rederick's argument overlooks contrary direct and circumstantial evidence presented at trial. Evidence at trial established that there were three bags of what was later determined to be 388 grams of 100% pure methamphetamine in the trunk of the car—a Monte Carlo—on the trailer that

Rederick was pulling when he was apprehended. Docket 103-1 at 105-07; Docket 95 at 82. Rederick was the sole occupant of the truck pulling the trailer when he was stopped. Docket 103-1 at 97. Zach Stark testified that, shortly before the stop, Rederick picked up a package of methamphetamine near Norfolk, Nebraska, and that Rederick and several others "tried the dope out." *See* Docket 103 at 97. Joseph Bauman testified that he was with Rederick in the garage when they loaded a Monte Carlo onto Rederick's trailer. Docket 103-1 at 20-22. Inside the garage, Bauman saw Rederick with a "big bag of methamphetamine," and he saw Rederick inside the trunk of the Monte Carlo on the driver's side—the same location where the methamphetamine was later found by law enforcement. *Id.* at 23-24; *see id.* at 104-05. Viewed in the light most favorable to the government, the evidence supports the reasonable interpretation of evidence that Rederick was in possession of methamphetamine on January 9, 2020. Thus, the motion for judgment of acquittal is denied as to Count 1.

The jury also found Rederick guilty on Count 2 of the superseding indictment that charged him with conspiracy to distribute a controlled substance—500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket 91 at 2-3. This charge required the United States to prove beyond a reasonable doubt that there was an agreement to distribute a controlled substance, that Rederick intentionally joined this agreement, and that at the time he did so, Rederick knew the purpose of the agreement. Docket 89 at 6-9; *United States v. Campbell*, 986

F.3d 782, 804 (8th Cir. 2021). The United States also had to prove beyond a reasonable doubt that the conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. *See Apprendi*, 530 U.S. at 490.

Rederick argues under Count 2 that "the evidence clearly was insufficient to establish that . . . [he] was [a] member of a conspiracy to distribute methamphetamine[.]" Docket 108 at 1. Instead, Rederick argues that the evidence at trial establishes only that he "was a user of methamphetamine from time to time" and that he "merely[] 'participated in a series of sales[.]' " Docket 109 at 8 (quoting *United States v. West*, 15 F.3d 119, 121 (8th Cir. 1994)). Rederick continues, "[t]hat [I] bought for [my]self and may have shared or sometimes sold some to others is not evidence of any agreement to distribute methamphetamine with others." *Id.*

"[I]t is settled in our circuit . . . that 'evidence of multiple sales of resale quantities of drugs is sufficient in an of itself to make a submissible case of a conspiracy to distribute.' " *United States v. Slagg*, 651 F.3d 832, 842 (8th Cir. 2011) (quoting *United States v. Garcia-Hernandez*, 530 F.3d 657, 661 (8th Cir. 2008)). When there is evidence of drug distribution in large amounts over an extended period of time, including "fronting," there is sufficient evidence of a conspiracy to distribute. *Id.* at 841 (citing *United States v. Pizano*, 421 F.3d 707, 720 (8th Cir. 2005)); *see also id.* at n.3 (" 'Fronting' denotes a transaction in which the buyer receives drugs on credit and repays the seller from the

resale proceeds." (quoting *United States v. Buckley*, 525 F.3d 629, 631-32 (8th Cir. 2008))).

At trial, Stark testified that he set up a deal for Rederick to buy a pound of methamphetamine from Brandon Wolff in either 2018 or 2019. Docket 103 at 65-66. Later, Stark was present when the "deal" took place at Rederick's farm. *Id.* at 70. As part of the deal, a supplier fronted Rederick a pound of methamphetamine. *Id.* at 73; *see also id.* at 74-76, 78 (describing the nature of the front). Later, Stark connected Rederick with Javier Benitz, Wolff's source, for another front sale to Rederick. *Id.* at 85. In exchange for Stark's help setting up the deal with Benitz, Stark got an ounce of methamphetamine from Rederick. *Id.* at 97-98. Bauman testified that, since meeting Rederick in 2018 or 2019, Rederick has paid him in methamphetamine, and Bauman has sold methamphetamine for Rederick at Rederick's request. *E.g.*, Docket 103-1 at 11-13, 15-16. And as previously discussed, Bauman was present in Norfolk for the sale of methamphetamine that occurred just before Rederick's arrest on January 9, 2020. The testimony of these witnesses permits an interpretation of the evidence that could lead a reasonable-minded jury to find that Rederick was a member of a conspiracy that obtained and distributed methamphetamine to and from multiple people. Thus, the motion for judgment of acquittal is denied as to Count 2.

**II.     Motion for New Trial**

Under Federal Rule of Criminal Procedure Rule 33(a), a court can vacate a judgment and grant a new trial "if the interest of justice so requires." "As a

6

general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). The court's authority to grant a new trial should be used cautiously and sparingly. *United States v. Cole*, 537 F.3d 923, 926 (8th Cir. 2008) (citation omitted).

"Rule 33 is [an] unusual remedy that is reserved for 'exceptional cases in which the evidence preponderates heavily against the verdict.' " *United States v. Anwar*, 880 F.3d 958, 970 (8th Cir. 2018) (alteration in original) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Campos*, 306 F.3d at 579.

Rederick moves for a new trial and challenges "the weight of the evidence supporting his conviction on both Counts 1 and 2." Docket 109 at 8. Rederick argues that "[t]he government's cooperating witnesses Zachary Stark and Joseph Bauman completely lacked credibility and any conviction based upon their testimony simply cannot stand." Docket 108 at 2.

Here, the parties had every opportunity to probe the truthfulness of each witness, including Stark and Bauman, and the jury was able to assess each witness's credibility. In hearing from witnesses with differing accounts, the jury was able to credit the testimony of witnesses they found credible and discount testimony that they found inconsistent or otherwise not credible. Rederick cites to specific inconsistencies in Stark's and Bauman's testimony, and he suggests

7

that both had improper motives for testifying. *See* Docket 109 at 11-14. But the inconsistencies he identifies are all within the trial transcript, meaning that the jury heard the same information and came to its own conclusion as to credibility. And both witnesses were questioned by Rederick's attorney regarding their respective motivations for testifying. Without more, Rederick has failed to identify any unfairness in the trial or miscarriage of justice in its result. Thus, the court will not exercise its discretion to order a new trial, and the motion is denied.

## CONCLUSION

A reasonable-minded jury could find the defendant guilty on both counts beyond a reasonable doubt, and no miscarriage of justice occurred. Thus, it is

ORDERED that Rederick's motion for judgment of acquittal (Docket 108), or alternatively for a new trial, is denied.

Dated March 30, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE